## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

IN RE:      **WILLIAM H SIMMONS And**      **3:06-bk-10318 E**
                **CYNTHIA L SIMMONS, Debtors**      **CHAPTER 7**

**HELENA CHEMICAL COMPANY**      **PLAINTIFF**

**V.**      **AP NO.: 3:06-ap-01292**

**WILLIAM H SIMMONS a/k/a BILL SIMMONS**
**CYNTHIA L SIMMONS a/k/a LYNN SIMMONS**      **DEFENDANTS**

### ORDER GRANTING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AGAINST DEFENDANT WILLIAM H SIMMONS AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AGAINST DEFENDANT CYNTHIA L SIMMONS

Plaintiff, Helena Chemical Company ("**HCC**"), filed its *Complaint Under 11 U.S.C. § 523 Requesting Debt Be Excepted From Discharge* against Defendants William H. Simmons and Cynthia L. Simmons (the "**Defendants**") on July 28, 2006. The Defendants filed their *Response to Complaint under 11 USC § 523 Requesting Debt to Be Excepted from Discharge* (the "**Answer**") on August 28, 2006. Plaintiff filed its *Motion for Summary Judgment* (the "**Motion**") against the Defendants on January 16, 2007. The following exhibits were attached to the Motion: the Defendants' Voluntary Petition; the Complaint; the Defendant's Answer; Partnership Agreement for Simmons Family Farms Partnership dated December 30, 2003; Credit Sales and Services Agreement between HCC and Simmons Family Farms Partnership; Guarantee Agreement; Security Agreement; UCC financing statement; Itemized statement of account; Affidavit of Curtis

1

Hopkins; Selected Excerpts from the Deposition of Christopher Simmons; Selected Excerpts from the Deposition of William H. Simmons; Selected Excerpts from the Deposition of Danny Wallis. The Defendants did not file a response to the Motion. None of the parties requested a hearing in this matter, and upon the expiration of the Defendants' opportunity to respond to the Motion as stated in this Court's *Second Notice of Opportunity to Respond*, entered on February 15, 2007, the Court took the matter under advisement. This Court has jurisdiction pursuant to 11 U.S.C. §§ 157(a) and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure, as applied to these proceedings through Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions or affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, this Court is required to view the facts, and draw all inferences therefrom, in the light most favorable to the nonmoving party. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Summary judgment is appropriate when a court can conclude that no reasonable jury could

find for the nonmoving party on the basis of the evidence presented in the motion and response. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**UNDISPUTED FACTS**

On February 2, 2006, the Defendants jointly filed a voluntary petition under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "**Bankruptcy Code**"). The Defendants' *Schedule F – Creditors Holding Unsecured Nonpriority Claims* lists a debt owed by the Defendants individually to HCC in the amount of $122,191.59 which is based on personal liability for certain debts owed by Simmons Family Farm Partnership ("**SFFP**") to HCC. SFFP is an Arkansas general partnership, in which the Defendants are general partners. In March, 2004, SFFP sought to obtain financing from HCC to purchase certain agricultural supplies and services. However, neither SFFP, nor any of its general partners, individually or collectively, had sufficient credit-worthiness to obtain financing from HCC on their own.

In order to induce HCC to extend credit to SFFP and the Defendants, the Defendants represented to HCC that Danny Wallis would guarantee the credit extended by HCC. On or about March 15, 2004, Danny Wallis submitted a personal financial statement to HCC depicting his financial net worth. Based on the financial statement provided by Mr. Wallis, HCC agreed to extend credit to SFFP and Defendants on the condition that Mr. Wallis would execute a personal guaranty to secure the debt of SFFP to HCC. On March 22, 2004, the Defendants' general partner (and son), Christopher Simmons, submitted to HCC, a Guaranty

Agreement (the "**Guaranty**") which he alleged to have been executed by Danny Wallis.  Based upon the Guaranty, HCC entered into a Credit Sales and Services Agreement dated March 22, 2004 with SFFP (the "**Contract**"), whereby HCC extended credit to SFFP on the terms and conditions set forth in the Contract.

Pursuant to the Contract, SFFP purchased various agricultural supplies and services from HCC on open account.  SFFP defaulted under the terms of the Contract, and HCC demanded payment from the Defendants.  As general partners of SFFP, the Defendants are personally liable for the payment of the indebtedness owed by SFFP to HCC.  As of April 25, 2005, the total amount owed by the Defendants to HCC for SFFP's debts under the terms of the Contract was $122,191.59.

After SFFP's default, when HCC attempted to collect from Danny Wallis, HCC discovered that Mr. Wallis never executed the Guaranty.  Instead Christopher Simmons forged Danny Wallis' signature to the Guaranty.  By submitting the forged Guaranty to HCC, Christopher Simmons falsely represented to HCC that Danny Wallis had agreed to guarantee the Contract and SFFP's debt on the open account, and that Mr. Wallis had personally executed the Guaranty.  Christopher Simmons knew that the representations he made to HCC were false at the time they were made.  Christopher Simmons made the false representations deliberately and with the intent and purpose of deceiving HCC.

Having no knowledge of Christopher Simmons' deceit, HCC justifiably relied upon Christopher Simmons' fraudulent representations by entering into the

Contract and extending credit to SFFP on open account.  HCC suffered a loss as a direct and proximate result of Christopher Simmons' fraud in the amount of at least $122,191.59, because if HCC had known that Christopher Simmons forged Danny Wallis' signature on the Guaranty, it would not have entered into the Contract or extended credit to SFFP.

It is also undisputed that the fraud perpetrated by Christopher Simmons against HCC was perpetrated while Christopher Simmons was acting for and on behalf of SFFP in the ordinary course of the partnership's business and for partnership purposes.  It is further undisputed that the credit extended by HCC to SFFP as a result of Christopher Simmons' fraud, and the goods and services procured by SFFP therewith, were used for partnership purposes and directly benefited SFFP's partners.

It is also undisputed that Defendant William H. Simmons ("**Bill Simmons**") knew or should have known of the fraud committed on HCC by Christopher Simmons.  Both Christopher Simmons and Defendant Bill Simmons stated in their depositions that, within a short time after Christopher Simmons submitted the forged Guaranty to HCC, Christopher Simmons told Bill Simmons of the forgery.  Bill Simmons acquired this knowledge before SFFP began purchasing agricultural supplies and services from HCC on open account.  Despite his knowledge, Bill Simmons failed to notify or otherwise alert HCC to the fraud.

## ANALYSIS

Plaintiff's Complaint alleges that the debt owed by the Defendants as general partners of SFFP is not dischargeable under 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code as a result of Defendant Christopher Simmons' false representations regarding the Guaranty.  Section 523(a)(2)(A) provides that a discharge under § 727 of the Bankruptcy Code does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A).  The purpose of section 523(a)(2)(A) is to "prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors." 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][a] (rev. 15th ed. 2006).

For a creditor to prevail against a debtor in a non-dischargeability action under § 523(a)(2)(A), the creditor must prove the following elements: (1) that the debtor made a false representation; (2) that at the time the representation was made, the debtor knew the representation to be false; (3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representation; and, (5) that the creditor sustained the alleged loss and damage as a proximate result of the representation having been made. *Lindau v. Nelson (In re Nelson)*, No. 06-6042 MN, 2006 WL 3391437 at *5 (B.A.P. 8th Cir. Nov. 24,

2006) (citing *The Merchs. Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999)); *Burt v. Maurer (In re Maurer)*, 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000). Each element must be proved by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, (1991); *Countrywide Home Loans, Inc. v. Blair*, 324 B.R. 725, 729 (Bankr. W.D. Ark. 2005).

## Imputation of Fraud to Business Partners.

Although the Defendants' partner (and son), Christopher Simmons, actually made the false representations in this case, this Court recognizes the widely-accepted principle that an agent's fraud may be imputed to the agent's principal, such that the principal may be denied a discharge pursuant to § 523. *See Gregory Co., Inc. v. Herrin (In re Herrin)*, No. 01-AP-1009, 2002 WL 32114565, *2 (Bankr. E.D. Ark. Dec. 10, 2002). However, to impute an agent's fraud to his principal, a plaintiff must show "more than the mere existence of an agent-principal relationship." *Walker v. Citizens State Bank of Maryville, Missouri (In re Walker)*, 726 F.2d 452, 454 (8th Cir. 1984). The Plaintiff must also show that the principal knew or should have known of the agent's fraud. *Id*. "Whether a principal knew or should have known of his agent's fraud is, of course, a question of fact." *Id*.

This authority is consistent with cases from other jurisdictions regarding whether one partner's fraud may be imputed to another partner who did not participate in the wrongful act and had no knowledge of it. *See In re Lovich*, 117

F.2d 612, 614 (2d. Cir. 1941) ("Several cases have held that general principles of agency do not apply to require denial of a discharge where the false statement of his agent was not known to the bankrupt, or in any way acquiesced in by him.") (citing *Hardie v. Swafford Bros. Dry Goods Co.*, 165 F. 588 (5th Cir. 1908; *Weinberg v. American Shoe Co.*, 15 F.2d 557 (5th Cir. 1926); In re Maloof, 2 F.2d 373 (N.D. Ga. 1924); In re Cazer, 283 F. 852 (N.D. Iowa 1922)). *See also Frank v. Michigan Paper Co.*, 179 F. 776, 779 (4th Cir. 1910) (discussing *Hardie*).

However, some courts have recently questioned such decisions, preferring to apply traditional agency principles instead, under which the debtor's knowledge would be irrelevant. *See Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 287 B.R. 515, 527 (9th Cir.BAP 2002) ("In a § 523(a)(2)(A) action, one spouse's fraud may be imputed to the other spouse under agency principles when, as in this case, they are also business partners.") *See also Hoffend v. Villa (In re Villa)*, 261 F.3d 1148, 1152 (11th Cir. 2001) (discussing expansion of the Supreme Court's holding in *Strang v. Bradner,* 114 U.S. 555 (1885), in which the Supreme Court excepted an innocent partner from discharge based on common law agency principles).

The *Tsurukawa* decision discussed a case from the Eighth Circuit involving creditor-investors who brought a non-dischargeability action under § 523(a)(2)(A) against former partners in a brokerage firm that had defrauded the investors. *Id.* at 526 (discussing *Owens v. Miller (In re Miller)*, 276 F.3d 424 (8th Cir. 2002)). In *Miller*, however, the Eighth Circuit addressed the issue of whether the bankruptcy

court erred in imputing fraud to the partners under the "control person" provision of the Securities and Exchange Act 1934 (the "**34 Act**"), which extends liability to securities brokers who did not directly participate in certain fraudulent acts prohibited by the 34 Act.

Bearing in mind the persuasive authority that the cases from other jurisdictions present, due to the substantial factual similarities of this case to the Eighth Circuit's *Walker* case, this Court believes that the *Walker* decision should control.  In *Walker*, the Eighth Circuit considered whether a bank had presented sufficient evidence to show that a debtor husband knew, or should have known, of his wife's fraud, where the wife had acted as the debtor's agent in running the family hardware store.  *Id.* at 453.  Although Christopher Simmons' fraud may differ from that perpetrated by the debtor's wife in *Walker*, the close relationship of SFFP's partners makes the *Walker* case analogous to the present case before the Court.

In this case, had the Defendants personally acted as Christopher Simmons did, their acts would clearly satisfy each of the five elements required to prevail on a non-dischargeability action under § 523(a)(2)(A).  However, since Christopher Simmons made the fraudulent representations in this case, this Court's decision must rest on whether the Defendants knew, or should have known, of Christopher Simmons' fraud.

With regard to Defendant Bill Simmons, the undisputed facts demonstrate that Bill Simmons knew or should have known of the fraud committed on HCC by

Christopher Simmons, and demonstrate that the Plaintiff is entitled to summary judgment against Bill Simmons. In fact, once Bill Simmons knew of Christopher Simmons' fraud, he became a participant in the fraud, because he could have notified HCC of the forgery before SFFP began purchasing supplies and services under the Contract. Where a partner participates in, condones, or otherwise knew of, or should have known of, fraud, he should not be able to discharge any resulting debt under § 523(a)(2)(A). *Frost v. Pullens (In re Frost)*, No. 87-2177, 1989 WL 61763, *2 (9th Cir. June 1, 1989) (citing *Walker*, 726 F.2d at 454). Bill Simmons' active participation in Christopher Simmons' fraud demonstrates the type of fraud involving moral turpitude that § 523(a)(2)(A) expressly seeks to punish. *See Baker v. Sharpe (In re Sharpe)*, 351 B.R. 409, 422-23 (Bankr.N.D.Tex 2006). Therefore, Bill Simmons should not be able to avail himself of the Bankruptcy Code's discharge relief with regard to HCC's debt.

**Imputation of Fraud to Defendant Cynthia L. Simmons**.

Having determined that Bill Simmons' conduct should bar him from receiving § 727's relief with regard to the debt owed to HCC, the Court turns its attention to whether Christopher Simmons' fraudulent acts and representations may be imputed to Cynthia L. Simmons. In this case, the Plaintiff has not presented *any* evidence regarding whether Cynthia L. Simmons knew, or should have known, about Christopher Simmons' forging Danny Wallis' signature to the Guaranty and falsely representing that Mr. Wallis personally executed the Guaranty and agreed to be responsible for SFFP's debts. Such evidence regarding

Cynthia L. Simmons' knowledge presents a genuine issue of material fact on which the Plaintiff would bear the burden at trial. Additionally, given the fact that this court must draw all inferences in favor of the nonmoving party on a motion for summary judgment, the Court cannot conclude that Defendant Cynthia L. Simmons should have known of Christopher Simmons' fraud based solely on the undisputed facts. In fact, the Plaintiff has not shown any evidence that Cynthia L. Simmons even spoke about the Contract or the Guaranty with either Danny Wallis or her other partners. Therefore, this Court must find that a genuine issue of material fact remains, and the moving party is not entitled to judgment as a matter of law with respect to Defendant Cynthia L. Simmons.

### CONCLUSION

Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion is **GRANTED** with respect to Defendant William H. Simmons, and **DENIED** with respect to Defendant Cynthia L. Simmons.

**IT IS SO ORDERED.**

_____
HONORABLE AUDREY R. EVANS
UNITED STATES BANKRUPTCY JUDGE

DATE:  March 21, 2007

cc:    Mr. Ralph W. Waddell, attorney for Plaintiff
       Defendants, PRO SE
       James C. Luker, Chapter 7 Trustee
       U.S. Trustee